GOVERNMENT OF the VIRGIN ISLANDS,

v.

Reuben DOWLING, Appellant.

UNITED STATES of America,

v.

Reuben DOWLING, Appellant.

GOVERNMENT OF the VIRGIN ISLANDS,

v.

Rodney HENDRICKS, Appellant.

UNITED STATES of America,

v.

Rodney HENDRICKS, Appellant.

Nos. 79–2130, 79–2131, 80–1444 and 80–1445.

United States Court of Appeals, Third Circuit.

Argued April 24, 1980.

Decided July 9, 1980.

Certiorari Denied Nov. 3, 1980. See 101 S.Ct. 374.

Roland B. Scott, Jr., Christiansted, St. Croix, V.I, argued for appellant Dowling; Reuben Dowling on brief pro se.

R. Lolita Jones, Christiansted, St. Croix, V.I., argued, with whom Albert A. Sheen, Christiansted, St. Croix, V.I., was on the brief, for appellant Hendricks.

Douglas R. Schwartz, Asst. U.S. Atty., Christiansted, St. Croix, V.I., argued with whom Ishmael A. Meyers, U.S. Atty., Christiansted, St. Croix, V.I., was on the brief for appellees.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

Reuben Dowling (herein referred to as Reuben) and Rodney Hendricks appeal from their conviction in the District Court of the Virgin Islands of conspiracy to commit bank robbery, armed bank robbery and related crimes charged in informations filed against them and a codefendant, Roosevelt Dowling (herein referred to as Roosevelt), by the United States and the government of the Virgin Islands.

The three-count federal information charged the three defendants with: (I) armed robbery of the Bank of America, in violation of 18 U.S.C. § 2113(a), (II) putting in jeopardy by the use of a handgun the lives of employees and customers of the bank, in violation of 18 U.S.C. § 2113(d), and (III) conspiring to commit the substantive offenses charged in the first two counts, in violation of 18 U.S.C. § 371.

The eight counts in the territorial information charged the defendants with: (I) conspiring to rob the Bank of America, in violation of 14 V.I.C. §§ 551(1) and 552, (II) armed bank robbery, in violation of 14 V.I.C. § 1862(2), (III) unauthorized possession of a firearm during the commission of a crime of violence, in violation of 14 V.I.C. §§ 2253(a) and 2254, (IV) automobile theft, in violation of 14 V.I.C. § 1382, and (V), (VI), (VII) and (VIII) assaults with a deadly weapon against three named police officers, in violation of 14 V.I.C. § 297(2), counts V and VI naming Officers Carlos Rodriguez and Angel Santos, respectively, and counts VII and VIII both naming Officer Howard Daniels. Subsequently, counts I, II, and

VIII of the Virgin Islands' information were withdrawn.

Roosevelt, Reuben's younger brother, pleaded guilty to the first count of the federal information and Reuben and Hendricks went to trial on the two informations which were consolidated for trial purposes.

The evidence established that the Island Center Branch, located in Sunny Isle, St. Croix, of the Bank of America National Trust and Savings Association, an insured member of the Federal Deposit Insurance Corporation, was held up shortly before the bank's closing time at 2:00 P.M. on April 11, 1979, by two armed men wearing green army fatigue jackets, ski masks pulled down over their faces and sunglasses. These men were identified as Reuben and Hendricks by a bystander who saw them enter the bank. Reuben and Hendricks left the bank area, with a green laundry bag containing approximately $22,000.00 in cash, in a maroon Ford Fairmont car which was owned by one of the bank's customers. They were closely pursued by Officers Daniels, Santos and Rodriguez in an unmarked police car. The police caught up with the fleeing robbers in time to see them transfer from the maroon Ford car to a white Chevrolet van. Officer Daniels, the driver, stopped the police car and stepped out with his gun drawn, shouting, "Police–halt!" The fugitives jumped into the van and sped off.

In the chase that followed the police in the unmarked car were joined by another policeman, Officer Parris, in a marked police car. The police noted the presence of a third person in the van. They identified two of these persons as Reuben and Roosevelt. Several exchanges of gunfire occurred during the course of the pursuit, the police observing shots being fired several times from the back and several times from the front passenger side of the van. Eventually, at the end of a winding dirt road, the three occupants of the van abandoned it and, after a final exchange of gunfire with the police, fled into the bush on foot and escaped.

The ownership of the van was traced to Ena Edney, the mother of Reuben and Roosevelt Dowling. Roosevelt was picked up for questioning by the police on the evening of the robbery. The next day Reuben and Hendricks were arrested.

The foregoing facts, as brought out by other witnesses at the trial, were corroborated and amplified by Roosevelt who testified that a week before the robbery Reuben, in the company of Roosevelt, obtained a .38 caliber revolver and told Roosevelt of his intent to rob the Sunny Isle branch of the Bank of America.

On the morning of the robbery, Reuben offered Roosevelt $1,000.00 if he would participate in the robbery. Roosevelt agreed. Reuben persuaded his mother to lend him her white van and at about 9:00 A.M., Reuben and Roosevelt proceeded to Hendricks' home. Hendricks, carrying a .38 caliber pistol in his back pocket, joined the brothers in the van. Reuben and Hendricks revealed to Roosevelt their plan to steal a car, a red Volkswagen which they had already selected, in which they intended to make their escape from the bank and drive to a predesignated place where Roosevelt would be waiting for them in the van.

Reuben and Hendricks were unable to steal the red Volkswagen and the three spent the morning, for the most part, cruising around St. Croix in the van looking for a car to steal. Reuben and Hendricks loaded their guns and looked over the clothing which they intended to wear while robbing the bank and later discard. Included in the clothing were knit hats which could be worn rolled up or pulled down over the face. Reuben and Hendricks cut eyeholes in the knit hats and the three purchased sunglasses.

At noon the three drank a bottle of wine and at one o'clock they continued their search for a car to steal. Shortly before 2:00 P.M., they drove to a place not far from the bank, parked, and Hendricks and Reuben changed their clothes as planned. The three observed a man and a little girl proceeding from a maroon Ford Fairmont car, which was parked in the bank parking

lot, to the bank, leaving a woman behind in the maroon car. Reuben and Hendricks decided they would use this car for their getaway. The two, after telling Roosevelt where to take the van and wait for them, left the van and Roosevelt proceeded to the rendezvous. It was not long before he heard car doors slam and saw Reuben and Hendricks running from the maroon car, which Roosevelt had last seen in the bank parking lot, toward the van. Roosevelt noted the unmarked police car approaching not far behind the maroon car. With Reuben at the wheel, the three drove off in the van. Initially, according to Roosevelt, Hendricks fired about four shots at the police out of the back window. A short time later he fired several more shots from the rear of the van and then fired from the front side window several more shots. The three drove the van up a dirt road into the bush, jumped out and ran, Hendricks carrying the green laundry bag which contained the money stolen from the bank.

No evidence was offered on behalf of the defendants and the case was submitted to the jury which brought in a verdict of guilty on all counts as to both defendants. For the crimes charged by the United States government of which they were convicted the district court sentenced Reuben and Hendricks to terms of imprisonment as follows:

Twenty years on count I–Forcible bank robbery in violation of 18 U.S.C. § 2113(a),

Twenty years on count II–Jeopardizing the lives of bank employees and customers with a dangerous weapon in violation of 18 U.S.C. § 2113(d), and

Five years on count III–Conspiracy to commit bank robbery in violation of 18 U.S.C. § 371,

the sentences on counts I and II to be served concurrently and the sentence as to count III to be served consecutively to the sentences on counts I and II. With respect to the crimes charged by the government of the Virgin Islands, the district court imposed sentences on Reuben and Hendricks as follows:

Five years on count III–Possession of an unlicensed firearm during commission of a crime of violence in violation of 14 V.I.C. §§ 2253(a) and 2254,

Five years on count IV–Unauthorized use of a motor vehicle in violation of 14 V.I.C. § 1382,

Five years on count V–Third–degree assault upon Officer Rodriguez in violation of 14 V.I.C. § 297(2),

Five years on count VI–Third–degree assault upon Officer Santos in violation of 14 V.I.C. § 297(2), and

Five years on count VII–Third–degree assault upon Officer Daniels in violation of 14 V.I.C. § 297(2),

the sentence imposed as to counts III through VII to be served consecutively and to commence after the sentences imposed in the federal case were served. From the judgments entered on the counts of each information, Reuben and Hendricks appeal.

On appeal Hendricks questions the sufficiency of the evidence properly before the jury to support his conviction on the conspiracy count and both Hendricks and Reuben question the sufficiency of the evidence to establish their guilt as to various of the substantive crimes. Both appellants contend that prosecutorial misconduct, errors of the trial judge and the ineffectiveness of their counsel denied them a fair trial. In addition, Reuben, in a brief filed after the filing of a brief on his behalf by his court–appointed attorney, raises a number of contentions. Finally, the appellants contend that separate sentences on the federal and territorial counts were improperly imposed.

We will deal first with the question raised by Hendricks concerning the sufficiency of the admissible evidence to convict him of conspiring to commit armed bank robbery. He contends that evidence offered by the prosecution to prove that he conspired with his codefendants to rob the Bank of America was inadmissible hearsay erroneously submitted to the jury. He refers us to the settled rule that the extrajudicial declarations of a coconspirator may not be utilized to prove a defendant's guilt of conspiratorial conduct unless and until

the trial judge is satisfied that the prosecution has presented sufficient nonhearsay evidence of such conduct. *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974). Hendricks contends that the government failed to present the required independent evidence.

This court has determined that before an alleged coconspirator's hearsay declaration made in furtherance of a conspiracy may be submitted to the jury as evidence of a defendant's guilt on a conspiracy charge, the prosecution must have established the declarant's and the defendant's participation in a conspiracy by a preponderance of the independent evidence. *United States v. Continental Group, Inc.*, 603 F.2d 444, 456–457 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980); *United States v. Trowery*, 542 F.2d 623, 627 (3d Cir. 1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977). Clearly, the prosecution, in this case, met this burden with respect to Hendricks. Roosevelt Dowling's unrefuted eyewitness testimony as to the activities of Hendricks in concert with himself and Reuben on the morning of the robbery, their attempt to steal a getaway car, Reuben's and Hendricks' preparation of the clothing they would wear during the robbery, their instructions to Roosevelt on where to wait for them, their last–minute decision to obtain a car from one of the bank's customers and their flight in the van, provided not only circumstantial evidence from which conspiratorial conduct could be inferred, but also direct testimony as to the conspiratorial plotting itself. Moreover, Roosevelt's testimony inculpating Hendricks in the conspiracy was corroborated and the case against Hendricks on the conspiracy charge was independently strengthened by the testimony of another eyewitness, Cipriani, who observed the entry into the bank of the two robbers, one of whom he identified as Hendricks. Cipriani described Hendricks' attire and this testimony was corroborated by the testimony of Roosevelt, bank employees, a bank customer and clothing in evidence which was found in and around the abandoned van.

The direct testimony of Roosevelt and Cipriani to which we have alluded, as well as other independent evidence, satisfied the prosecution's obligation to establish, by a preponderance of the independent evidence, the existence of a conspiracy and of Hendricks' and the other defendants' participation in it as a basis for the submission of coconspirators' hearsay statements, if any, to the jury and was entirely sufficient to sustain the jury's ultimate findings resulting in Hendricks' conviction on the conspiracy count.

There is no merit to Hendricks' contention that the district court erred in failing to make an explicit finding that there was sufficient independent, nonhearsay evidence of a conspiracy to permit coconspirators' hearsay evidence to go to the jury. The nonhearsay evidence was so overwhelming and so greatly outweighed whatever hearsay evidence was admitted under the coconspirators exception to the hearsay rule that such a finding was hardly necessary, particularly since it does not appear from the record that the finding was requested or the lack of it objected to. Moreover, the trial judge is not required to make explicit findings to support his conclusion that the prosecution has presented the requisite independent evidence, and that he reached such a conclusion may be inferred, as here, from the judge's denial of the defendant's motion for acquittal on the conspiracy charge and his submission of the evidence to the jury. *United States v. Continental Group, Inc.*, 603 F.2d 444, 457–458 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

With respect to Hendricks' contention that the evidence supporting his conviction on all of the substantive counts was insufficient and Reuben's challenge to the sufficiency of the evidence supporting his conviction on the three assault charges, we are satisfied that sufficient evidence supported the jury's verdicts against both defendants as to all of the crimes charged. Roosevelt Dowling's unrefuted eyewitness testimony alone implicated both appellants as the perpetrators of all the crimes charged

against them, and to the extent that other evidence was offered, it substantially corroborated Roosevelt's testimony.

We find lacking in merit Hendricks' contention that Cipriani's testimony was erroneously admitted in that he refused to divulge the name of a person who accompanied him at the time he made the observations to which he testified. The record reveals that Hendricks' counsel expressly waived any objection to the admission of Cipriani's testimony based on his refusal to identify his companion, after Cipriani stated under oath, in the trial judge's chambers and in the presence of counsel, his belief that his companion's observations duplicated his own. Moreover, as we have stated, Roosevelt Dowling's testimony alone was amply sufficient to convict Hendricks on both the conspiracy and substantive counts.

■ Hendricks also asserts that error was committed with the admission of the testimony of a government witness, Judith Edwards, a former girlfriend of Reuben Dowling. She testified that during a visit to Reuben after he was in custody, he informed her of the details of the bank robbery in which he had participated. However, at side bar the witness was instructed by the trial judge to mention only the names of Reuben and Roosevelt and not to mention the name of any other person who could be involved in the robbery. This instruction the witness scrupulously followed, never mentioning Hendricks by name but always referring instead to "another person." In view of the other evidence connecting Hendricks to the robbery, the jury may have inferred that he was the third person to whom Edwards referred. However, since her evidence did not itself connect Hendricks with the crime and it was clearly admissible against Reuben, it was not error to receive it. In any event, it was harmless in view of the overwhelming direct evidence connecting Hendricks with the robbery.

■ With respect to his conviction on the assault charges, Reuben contends that this result was against the weight of the evidence in that the evidence was that he

merely drove the van while Hendricks fired from it at the pursuing police. As a coconspirator, Reuben was chargeable with the crimes of his fellow conspirators committed in furtherance of the conspiracy. The evidence showed that Hendricks, Roosevelt and Reuben planned their escape with the bank's money as part of their overall scheme to rob the bank and there was no evidence that Reuben, who continued to drive the van while Hendricks fired at the pursuing police, did not acquiesce in Hendricks' acts. Thus, the evidence supported the jury's verdict against Reuben on the assault charges on the basis of his role as a coconspirator, culpable as to the crimes committed by Hendricks in furtherance of the conspiracy.

■ Reuben contends that his conviction on the assault counts should be vacated because the trial judge erred in failing to instruct the jury that a defendant may be found guilty of the substantive crimes committed by a coconspirator only with respect to those acts of the coconspirator performed in furtherance of the conspiracy. No objection was made in the district court to the instruction which was given. Moreover even if the court's instruction was technically erroneous because of the omission referred to, no prejudice resulted since the evidence overwhelmingly established that the defendants' escape effort, during which the assaults occurred, took place in furtherance of the conspiracy of which Reuben was convicted. The jury's verdict, therefore, could not have been materially affected by the alleged error in the instructions.

One further question with respect to the assault convictions must be considered briefly. There were three such convictions, one in respect to each of three police officers involved in the "hot pursuit." If there had been only one shot fired, a serious question would arise as to whether it would support charges of assaults against three separate individuals under three counts. *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). However, that question cannot arise in this case since the evidence is clear that there were at

least three separate bursts of gunfire from the suspects' vehicle at different times as well as some firing from the bush after their vehicle had been abandoned. *See United States v. Williams,* 446 F.2d 1115, 1115–1116 (5th Cir. 1971); *Vera v. Beto,* 422 F.2d 1052, 1054 (5th Cir. 1070); *Cameron v. United States,* 320 F.2d 16 (5th Cir. 1963).

■ The appellants assert that the prosecution was guilty of serious misconduct in persisting in propounding leading questions to its witnesses. A careful examination of the trial transcript satisfies us that this objection is without merit. It is true that in the course of a three–day trial the prosecution did propound a number of leading questions. It is also true that many of these were objected to by counsel for the defendants and that in many cases the objections were sustained by the trial judge. We cannot say that the conduct of the prosecution in this regard was so flagrant as to vitiate the integrity of the trial or that the trial judge abused his discretion in permitting the propounding of those leading questions, objections to which he did not sustain. Accordingly, we find no merit in this contention.

Prior to the opening of the trial, counsel for Reuben moved for a severance which the court denied. Both appellants argue in this court that it was error not to grant a severance. The district court has wide discretion in this area, however. *United States v. Armocida,* 515 F.2d 29, 46 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). We think that its discretion was not abused in this case. Indeed, the evidence connecting both appellants to the bank robbery and its subsidiary crimes was so overwhelming as to preclude any notion that the legal rights of either of them were impaired by their being tried together.

Counsel for Hendricks who was appointed to represent him on this appeal and who did not try his case in the district court urges that trial counsel was ineffective in the defense of his client in the district court. Our examination of the record satisfies us that there is no merit in this contention.

■ In addition to the brief filed and oral argument presented by his counsel, Reuben has filed a brief *pro se* in which he asserts a number of errors alleged to invalidate his conviction. These we have carefully considered. But one of them requires mention. This is his contention that the charges against him should have been preferred against him by indictment by a grand jury rather than by information. There is no merit in this contention. In the unincorporated Territory of the Virgin Islands the requirement of the Fifth Amendment for indictment of a grand jury is not applicable and prosecutions have always been instituted by information rather than by indictment. Both section 25 of the Revised Organic Act, 48 U.S.C.A. § 1615, and Rule 54(a) of the Federal Rules of Criminal Procedure provide that all offenses shall continue to be prosecuted in the District Court of the Virgin Islands by information as heretofore except such as may be required by local law to be prosecuted by grand jury. No such local law has ever been enacted in the Virgin Islands. *Government of Virgin Islands v. Bell,* 423 F.2d 692 (3d Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1839, 26 L.Ed.2d 269, *reh. denied,* 399 U.S. 937, 90 S.Ct. 2238, 26 L.Ed.2d 809 (1970); *Rivera v. Government of Virgin Islands,* 375 F.2d 988, 990–992 (3d Cir. 1967). The remaining contentions raised in Reuben's *pro se* brief to the extent that they do not duplicate questions already considered are so lacking in merit as to require no discussion here.

Holding, as we do, that the appellants were validly convicted on all three counts of the federal information and on five counts (counts III, IV, V, VI and VII) of the territorial information, the question, raised by both appellants, remains as to whether the district court erred in imposing separate sentences upon the appellants with respect to each of these counts. In this connection, we bear in mind that the Federal Bank Robbery Act covers in a comprehensive manner not only thefts as such from federally–insured banks but also certain other crimes which may be committed in connec-

tion with the commission of bank thefts, with maximum penalties commensurate with the seriousness of each crime set forth. Thus, subsection (a) of 18 U.S.C. § 2113 permits a maximum penalty of 20 years imprisonment; subsection (d), a maximum of 25 years.[1] The Supreme Court has held that Congress, while intending to define greater and lesser offenses with the latter "merging" into the former upon the defendant's conviction of a combination of the offenses, did not intend to "pyramid" the penalties. *Prince v. United States*, 352 U.S. 322, 327–328, 77 S.Ct. 403, 406–407, 1 L.Ed.2d 370 (1957); *see United States v. Gaddis*, 424 U.S. 544, 547, 96 S.Ct. 1023, 1025, 47 L.Ed.2d 222 (1976); *United States v. Corson*, 449 F.2d 544 (3d Cir. 1971). With this rule in mind, we proceed to consider the sentences imposed upon the various counts of the two informations on which the appellants were convicted and sentenced.

■ The first two counts of the federal information charged the appellants with forceable bank robbery (count I) and with jeopardizing, by the use of a handgun, the lives of bank employees and customers during the commission of a bank robbery (count II), in violation of the Federal Bank Robbery Act, 18 U.S.C. § 2113(a) and (d). The district court sentenced the appellants to 20 years imprisonment on each of these counts, the two terms to be served concurrently. Since each of these counts charged a crime defined by the Federal Bank Robbery Act, it was error for the district court to impose separate sentences with respect to each of them. And this was so even though the terms of imprisonment were ordered to be served concurrently. *United States v. Mariani*, 539 F.2d 915, 917 (2d Cir. 1976); *United States v. Corson*, 449 F.2d

544, 551 and n. 15 (3d Cir. 1971); *United States v. Welty*, 426 F.2d 615 (3d Cir. 1970).

■ Count III of the federal information charged the appellants with a conspiracy, in violation of 18 U.S.C. § 371, to commit the substantive offenses charged in the first two counts. On this count the appellants were sentenced to serve five years in prison, the terms of imprisonment to run consecutively to their sentences of imprisonment on the first two counts. It is well established that conspiracy to commit a substantive offense and the commission of the substantive offense itself are separate crimes and punishable as such. This rule is applicable with respect to the conspiracy to rob a bank and the actual robbery of the bank itself under the Federal Bank Robbery Act, *United States v. Davis*, 573 F.2d 1177, 1180 (10th Cir.), *cert. denied*, 436 U.S. 930, 98 S.Ct. 2829, 56 L.Ed.2d 775 (1978); *Wright v. United States*, 519 F.2d 13, 20 (7th Cir.), *cert. denied*, 423 U.S. 932, 96 S.Ct. 285, 46 L.Ed.2d 262 (1975). Accordingly, the imposition by the district court of a separate sentence on this count was not error.

■ We turn next to the sentences imposed on the five counts of the territorial information on which the appellants were convicted. We will first consider their sentences on counts V, VI, and VII of that information, each of which counts charged them with assaults against a different one of three police officers who attempted to apprehend them following their departure from the Bank of America. The district court imposed sentences of five years imprisonment on each of these three counts, the sentences to be served consecutively to each other and to the sentences imposed on the federal counts. It will be recalled that

---

1. Subsections (a) and (d) of 18 U.S.C. § 2113 provide in relevant part:

   "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; . . .

   "Shall be fined not more than $5,000 or imprisonment not more than twenty years, or both.

   "(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty–five years, or both."

these assaults, involving three or more bursts of gunfire, separated in time, occurred almost immediately after the robbery in the course of a "hot pursuit" of the robbers. They were, therefore, assaults incidental to the robbery within the scope of the Federal Bank Robbery Act, 18 U.S.C. § 2113(d). *United States v. Pietras*, 501 F.2d 182, 187 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974); *United States v. Bamberger*, 460 F.2d 1277, 1278–1279 (3d Cir. 1972). Accordingly, if these assaults had been charged under the Federal Bank Robbery Act, 18 U.S.C. § 2113(d), it is clear that these counts would have to be held as "merged" for purposes of the imposition of sentence under the rule of *Prince v. United States, supra.*

In the present case, however, the assaults were charged under the territorial law, 14 V.I.C. § 297(2), not under the federal statute. The question, therefore, remains whether, under these circumstances, the district court was nonetheless precluded under the doctrine of the *Prince* case from imposing separate sentences with respect to them.

Undoubtedly, if these occurrences had taken place in a state of the union, the rule precluding separate sentences would not apply since, as an independent sovereign, such a state is free to punish criminal conduct even though the federal government has successfully prosecuted the same individual under the federal law for a similar offense growing out of the same occurrence. *United States v. Wheeler*, 435 U.S. 313, 316–317, 320, 98 S.Ct. 1079, 1082–1083, 1084, 55 L.Ed.2d 303 (1978). This is not true, however, in the case of a territory, since the latter does not have independent sovereignty but derives such powers as its government possesses directly from congressional grant under article IV, section 3 of the federal Constitution. Thus, in *United States v. Wheeler, supra*, the Supreme Court said:

[A] territorial government is entirely the creation of Congress, "and its judicial tribunals exert all their powers by authority of the United States." [Citations and footnote omitted.] When a territorial government enacts and enforces criminal laws to govern its inhabitants, it is not acting as an independent political community like a State, but as "an agency of the federal government." [Citation omitted.]

Thus, in a federal Territory and the Nation, as in a city and a State, "[t]here is but one system of government, or of laws operating within [its] limits." [Citation omitted,] City and State, or Territory and Nation, are not two separate sovereigns to whom the citizen owes separate allegiance in any meaningful sense, but one alone. [Footnote omitted.] And the "dual sovereignty" concept of Bartkus and Abate does not permit a single sovereign to impose multiple punishment for a single offense merely by the expedient of establishing multiple political subdivisions with the power to punish crimes. 435 U.S. at 321–322, 98 S.Ct. at 1085–1086.

It follows, we think, that since the Virgin Islands statute was enacted under power conferred upon its legislature by Congress which had itself directly enacted the Federal Bank Robbery Act, the two statutes must be regarded as in *pari materia* and the offenses charged under each of them with respect to a single bank robbery must be held to be subject to the rule laid down in the *Prince* case, that but one sentence may be imposed in respect to all of the offenses included in the Bank Robbery Act. Support for this proposition is also to be found in cases from the District of Columbia in which crimes committed in connection with a bank robbery were charged under both the federal statute and the District of Columbia Code, itself an enactment of Congress although solely of local application. *United States v. Diggs*, 522 F.2d 1310, 1323–1324 (D.C.Cir.1975), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Shepard*, 515 F.2d 1324, 1336 (D.C.Cir.1975). We conclude that it was error for the district court to impose independent sentences on the assault counts of the territorial information (counts V, VI, and VII).

The territorial information included two other counts upon which the appellants were convicted, one for the legally unauthorized possession of a firearm used during the commission of a crime of violence and the other for the possession and use of a motor vehicle without the consent of the owner. The appellants received sentences of five years in prison on each of these counts, the terms to be served consecutively as to each other and as to the sentences imposed on other counts of the federal and territorial informations.

Conviction of the crime of automobile theft, that crime being one not comprehended in the federal bank robbery statute, sufficiently supported the imposition of a separate sentence. The firearm count, however, raises a more difficult question because the Federal Bank Robbery Act does contemplate the use of a dangerous weapon in connection with a bank robbery. However, it does not specify that the dangerous weapon thus used shall be unlicensed or otherwise illegally carried, whereas the Virgin Islands gun statute, 14 V.I.C. § 2253(a), upon which count III of the territorial information was based, applies only to firearms unlawfully carried. Thus, proof of a violation of the Virgin Islands gun statute as charged in the fourth count of the territorial information involves an element, namely, the illegality of the mere carrying of the weapon, which need not be shown in proving the bank robbery charge. We have held that a firearms count under 18 U.S.C. § 924(c)(2), which is analogous to the firearms count charged in count III of the Virgin Islands information, charges a crime separate and distinct from that of assault with a dangerous weapon under 18 U.S.C. § 111. *United States v. Busic*, 587 F.2d 577, 584 (3d Cir. 1978), *rev'd on other ground*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Since both §§ 111 and 2113 provide for an enhanced penalty where the underlying or predicate felony is committed with a dangerous weapon and the two statutes are analogous in this sense, *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), we conclude that our interpretation of § 924(c)(2) in

*United States v. Busic* is controlling here. Accordingly, we hold that it was not error to impose separate sentences on counts III and IV of the territorial information.

Having determined that it was error to impose separate sentences on counts I and II of the federal information and on counts V, VI and VII of the territorial information, the district court must be directed to vacate all of these sentences and impose a general sentence not to exceed the maximum permissible sentence already imposed and this must be done in a proceeding in conformity with Rule 43 of the Federal Rules of Criminal Procedure. *United States v. Corson*, 449 F.2d 544, 552 (3d Cir. 1971); *see United States v. Gomez*, 593 F.2d 210, 215–219 (3d Cir.), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979).

In the present case we are confronted with a problem which was not involved in the *Corson* case, however. There a single indictment was involved and the three counts of that indictment upon which we ordered a single general sentence to be imposed were all brought under the Federal Bank Robbery Act. Here, however, while two of the counts involved were brought under the Federal Bank Robbery Act, the remaining three counts, of the five upon which a single general sentence is to be imposed, were brought under the territorial assault statute. Accordingly, in normal course the defendants would be committed to the custody of the Attorney General of the United States for the execution of the sentences under the federal counts and to the custody of the Director of Corrections of the Virgin Islands for the execution of the sentences under the territorial counts. Obviously, both could not execute the single general sentence under all five counts which we are directing. Here the federal counts under the Federal Bank Robbery Act charge more serious offenses than do the territorial assault counts and the sentences imposed under them were greater—twenty years imprisonment as against five. We think, therefore, that it will be appropriate for the district court in imposing the single general sentence upon all five counts to commit the defendants to the custody of

the Attorney General of the United States for the execution of that entire sentence and to relieve the territorial authorities of any responsibility therefor.

The judgments insofar as they convict the appellants on counts I, II, and III of the federal information and on counts III, IV, V, VI and VII of the territorial information and insofar as they impose sentences on count III of the federal information and counts III and IV of the territorial information will be affirmed.

The judgments insofar as they impose sentences on counts I and II of the federal information and counts V, VI and VII of the territorial information will be remanded to the district court with directions to vacate the separate sentences imposed by the judgments on those counts and, in a proceeding in conformity with Rule 43, F.R. Crim.P., to impose a single general sentence on each defendant on all five counts not to exceed the sentence of 20 years imprisonment originally imposed on count II of the federal information.