782 F.2d 399
 19 Fed. R. Evid. Serv. 1535
 GOVERNMENT OF the VIRGIN ISLANDS
v.
BRATHWAITE, Edgar, Appellant in No. 84-3790.
UNITED STATES of America
v.
BRATHWAITE, Edgar, Appellant in Nos. 84-3791.
UNITED STATES of America
v.
OTTLEY, Peter, Appellant in No. 84-3792.
GOVERNMENT OF the VIRGIN ISLANDS
v.
OTTLEY, Peter Edwin.
Appeal of Peter OTTLEY.
 Nos. 84-3790 to 84-3793.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 2, 1985.
Decided Jan. 21, 1986.
 
 Leonard Bernard Francis, Jr. (argued), Charlotte Amalie, St. Thomas, Virgin Islands, for Edgar Brathwaite.
 Lolita d'Jones (argued), Christiansted, St. Croix, Virgin Islands, for Peter Ottley.
 Hugh P. Mabe, III (argued), Asst. U.S. Atty., James W. Diehm, U.S. Atty., Charlotte Amalie, St. Thomas, Virgin Islands, for appellee.
 Before HUNTER, GARTH and BECKER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 Appellants, Peter Ottley and Edgar Brathwaite, bring this appeal from judgments of conviction and sentence in the District Court of the Virgin Islands. Ottley and Brathwaite were tried by jury and convicted of conspiracy to import and distribute cocaine and marijuana in violation of 21 U.S.C. Secs. 846, 963 (1982), and conspiracy to traffic in cocaine and marijuana in violation of V.I.Code Ann. tit. 19, Sec. 609 (1976). They received eight years imprisonment and three years mandatory parole for their convictions under the United States statutes and suspended five year sentences for their convictions under the Virgin Islands statute. The sentences under the United States and Virgin Islands statutes were to run concurrently with each other. We remand the matter to the district court for further proceedings.
 
 I.
 
 2
 The conspiracy in this case concerned a scheme by Ottley and Brathwaite to obtain an aircraft for flying to a foreign country to pick up marijuana and cocaine, and return to the Virgin Islands. At trial, the government introduced evidence that Ottley and Brathwaite entered into an agreement with two employees of Polymer Industries, Allen Grant and Robert Brock, to rent one of the Polymer Industries corporate planes. Ottley initiated this transaction by a phone call to Grant on Tuesday, June 12, 1984 in which he informed Grant of his urgent need for one or two planes.
 
 
 3
 Several months prior to Ottley's June 12th phone call, Grant had met with Ottley and learned of Ottley's desire to charter a plane. At this earlier meeting Grant had inferred from the following circumstances that Ottley wanted the plane for drug smuggling: the amount Ottley was willing to pay for a short-term rental, his questions about the flight capabilities of available airplanes, and the drug smuggling involvement of the individuals who had put Ottley in touch with Grant.
 
 
 4
 After Grant received the June 12th call, he solicited the help of his assistant, Brock, who had been a confidential informant in the past, and told Brock that he should take the next call from Ottley. The next time Ottley called, Brock told him that he was handling the transaction for Grant and that a plane was available for approximately $30,000. The length of the rental was to be less than a week. Following this conversation, Brock informed the Drug Enforcement Administration ("DEA") of Ottley's phone calls. In a subsequent call to Ottley's number on June 13th, Brock spoke with a man named "Baldhead" who stated that he was Ottley's partner. "Baldhead" was identified at trial as appellant Brathwaite. During the conversation, which was taped and played at trial, Brathwaite immediately asked the price of the rental after Brock identified himself, and the two men discussed further details of the transaction.
 
 
 5
 Over the next two days, Ottley and Brathwaite pursued the negotiations further in several phone conversations with Brock. Although Brock spoke with only one of them during each conversation, it was clear that Ottley and Brathwaite were speaking with each other during the periods between conversations with Brock. On June 15th, Brock and DEA agent James Bell met with Ottley and Brathwaite in a hotel room in St. Thomas. At this meeting, appellants expressed satisfaction with the availability of a plane that could carry a large quantity of marijuana and cocaine, and stated that they were using the plane to fly to Colombia. According to the plan they described to Bell and Brock, Ottley was to travel on the plane with the pilot and pick up a "load," which would be dropped in the ocean. Brathwaite was to be in charge of recovering the "load."
 
 
 6
 The next meeting took place on June 16th when Ottley and Brathwaite came to Brock's hotel room with deposit money. When asked about the remainder of the rental price, appellants stated that there would be no problem, but also suggested that Brock join them as a partner rather than merely rent the plane. It was after this suggestion that the undercover operation terminated and appellants were arrested.
 
 II.
 
 7
 Two issues in this appeal are raised by both Brathwaite and Ottley. In addition, Ottley raises several issues not discussed by Brathwaite. We will address the shared issues first and then turn to the issues presented by Ottley alone.
 
 
 8
 A. Admissibility of Coconspirators' Statements
 
 
 9
 The first issue we confront concerns whether the trial court erred in admitting against Brathwaite and Ottley their out-of-court statements as coconspirators. Under the Federal Rules of Evidence, the out-of-court statements of a coconspirator are considered admissions and may be used as substantive evidence. See Fed.R.Evid. 801(d)(2). Rule 801(d)(2)(E) states that statements offered against a party that are made "by a coconspirator of a party during the course and in furtherance of the conspiracy" are admissible as nonhearsay. In order for coconspirators' statements to be admitted, this court has required the production of independent evidence, or proof aliunde, establishing that the person against whom the statement is offered participated in the conspiracy. See, e.g., United States v. Gibbs, 739 F.2d 838, 843 (3d Cir.1984) (in banc), cert. denied, --- U.S. ----, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985); In re Japanese Electronic Products Litigation, 723 F.2d 238, 261 (3d Cir.1983), cert. granted in part, --- U.S. ----, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985); United States v. Ammar, 714 F.2d 238, 245 (3d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Brathwaite and Ottley claim that the trial court erred in determining that this requirement was satisfied. We disagree.
 
 
 10
 In this circuit, we have held that the prosecution must lay a foundation for the admission of coconspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants by " 'a fair preponderance of independent evidence.' " Gibbs, 739 F.2d at 843 (quoting United States v. Trotter, 529 F.2d 806, 812 (3d Cir.1976)). The independent evidence must demonstrate only that a conspiracy or joint undertaking existed; it need not show that the combination of individuals including the defendant or defendants was " 'criminal or otherwise unlawful.' "[1] In re Japanese Products, 723 F.2d at 262 (quoting Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 71, 62 L.Ed. 260 (1917)). Our standard of reviewing the trial court's finding that a preponderance of independent evidence established Brathwaite's and Ottley's participation in a conspiracy is limited to whether the trial court had "reasonable grounds" to make its determination. Gibbs, 739 F.2d at 843; Ammar, 714 F.2d at 249.
 
 
 11
 We first find that the statements that Brathwaite and Ottley made during the negotiations for the airplane rental, which may be considered as admissions of their own individual involvement in a conspiracy, reflect a criminal plan that could not have been carried out except in concert with another. See Government of the Virgin Islands v. Hoheb, 777 F.2d 138, 141-142 (3d Cir.1985). But even leaving aside the content of Brathwaite's and Ottley's statements, we find that other evidence introduced at trial clearly showed that Brathwaite and Ottley were working closely together during the period June 12, 1984 and June 16, 1984 toward a common goal. In addition to testimony regarding repeated phone calls made by appellants to Grant and Brock at Polymer Industries, the prosecution introduced Virgin Islands Telephone Company records reflecting long distance calls to Polymer Industries on June 12th and June 13th as well as calls to Venezuela on the 14th from a phone for which Brathwaite signed as a corporate officer. Other phone bills recorded a call to Venezuela on June 13th made from Ottley's home. Moreover, the evidence established that Brathwaite and Ottley attended two meetings with Brock and Bell in a hotel room on June 15th and 16th, that Ottley made a phone call to Brock after the first meeting, and that Brathwaite and Ottley arrived at the second meeting with a large amount of cash wrapped in plastic and brown paper bags.[2] Viewed as a whole, these series of meetings and phone calls are sufficient to support a reasonable finding of a joint undertaking by Brathwaite and Ottley. See Ammar, 714 F.2d at 250 (timing and circumstances of series of meetings may be sufficiently suspicious to permit a reasonable inference of complicity in criminal enterprise); United States v. Gonzalez, 700 F.2d 196, 203 (5th Cir.1983) (participation in conspiracy may be inferred from "development and collocation of circumstances"). We therefore hold that the trial court did not err in admitting the coconspirators' statements.
 
 B. Sufficiency of the Evidence
 
 12
 The other issue that both Ottley and Brathwaite raise is whether the evidence was sufficient to support their convictions. In reviewing this question, we must determine whether substantial evidence, viewed in the light most favorable to the prosecution, supports the jury's guilty verdict. See Glasser v. United States, 315 U.S. 60, 61, 62 S.Ct. 457, 461, 86 L.Ed. 680 (1942). Moreover, we note that a decision to reverse a conviction on grounds of insufficiency should be confined to cases where the prosecution's failure is clear. See Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). In view of these standards, we hold that the statements and conduct of Brathwaite and Ottley, together with the other evidence of the conspiracy, provide sufficient evidence to support the convictions.[3]C. Entrapment Defense
 
 
 13
 In conjunction with his sufficiency of the evidence argument, Ottley contends that even if he committed any offense, he was entrapped to do so by the government. The entrapment defense is not available to Ottley because he fails to admit the facts on which his prosecution was based, a prerequisite for use of the defense. See, e.g., United States v. Hill, 655 F.2d 512, 514 (3d Cir.1981), cert. denied, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); United States v. Crossman, 663 F.2d 607, 610 (5th Cir.1981). Ottley also argues, however, that the government conduct was so "outrageous" that his conviction should be reversed. We reject this contention as an alternative method of invoking an entrapment defense. See Crossman, 663 F.2d at 610 (asserted "outrageous conduct" by government does not afford defendant entrapment defense); see also United States v. Russell, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973) (lower courts have erred in assuming that defense of entrapment provides authority to judiciary to dismiss prosecutions because of "overzealous law enforcement").
 
 D. Additional Evidentiary Matters
 
 14
 Ottley maintains that the trial court erred in admitting into evidence tape recordings of conversations between Brock and each of the appellants and the currency that appellants handed over to Brock and Bell at the June 16th meeting because the "chain of custody" of these items was not adequately established. With respect to the tape recordings, Ottley made no objection to their admission at trial. Thus, we will reverse the trial court's decision to admit the tape recordings only if their admission constituted plain error, a standard intended to provide redress only for a manifest miscarriage of justice. See, e.g., United States v. Nobel, 696 F.2d 231, 237 (3d Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); Fed.R.Crim.Pro. 52(b). Because we interpret the objection made at trial concerning the currency to bear on the adequacy of prosecution's showing of chain of custody, we review the trial court's decision to admit the currency under the stricter standard of abuse of discretion. See, e.g., Joy Manufacturing Co. v. Sola Basic Industries, Inc., 697 F.2d 104, 111 (3d Cir.1982). Applying these two standards, we cannot say that the trial court erred in admitting the tape recordings and currency. We do not challenge Ottley's assertion of the propriety of requiring testimony tracing the "chain of custody" of these items prior to their admission into evidence. See E. Cleary, McCormick on Evidence Sec. 212, at 667-68 (3d Ed.1984) (sound exercise of trial court's discretion may require "chain of custody" foundation for items that may be easily exchanged or altered). We conclude only that the chain of custody foundation laid by the prosecution prior to the admission of the tape recordings and currency was not so insufficient as to merit reversal of his conviction.[4]
 
 
 15
 Ottley also asserts that telephone bills were erroneously admitted over an objection that they were irrelevant. Again, in reviewing the trial court's decision to admit this reviewing evidence, we inquire whether the court abused its discretion. Relevant evidence is "evidence having any tendency to make evidence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The telephone records reflected calls to a number at Polymer Industries on June 12th and 13th as well as calls to Venezuela, near the point in Colombia where the appellants planned to fly. Thus, the records corroborated testimony concerning the appellants' actions and statements, and tended to make the existence of a conspiracy to import controlled substances more probable. We therefore rule that the trial court did not abuse its discretion in admitting the evidence.
 
 
 16
 The final evidentiary issue presented by Ottley concerns the trial court's denial of his motion in limine to prohibit the prosecution from using a record of Ottley's felony conviction in Puerto Rico and from cross-examining him on the conviction. Because Ottley did not testify at trial, he did not preserve this issue for appeal. See Luce v. United States, --- U.S. ----, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984). Accordingly, we will not consider it. See id.
 
 E. Prosecution Misconduct
 
 17
 Ottley asserts that the prosecution was guilty of serious misconduct in propounding leading questions to the witnesses throughout the trial. It is true that the prosecution asked a large number of leading questions during its direct examination of witnesses, that Ottley's attorney objected to at least one leading question, and that on one occasion the trial court suggested on its own that the prosecution refrain from such questions. We nevertheless hold that the conduct of the prosecution in asking the questions was not "so flagrant as to vitiate the integrity of the trial" or that the trial court abused its discretion in allowing the trial to proceed in spite of the questions. See Government of the Virgin Islands v. Dowling, 633 F.2d 660, 667 (3d Cir.), cert. denied, 449 U.S. 960, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980).
 
 
 18
 The final issue presented by Ottley is whether the government abused its prosecutorial discretion in charging him. Ottley first argues that the prosecution improperly charged him with conspiracy without adequate basis for the charges. We agree with the government that this argument merely rephrases the insufficiency of the evidence contention, which we disposed of earlier.
 
 
 19
 F. Conviction and Sentencing Under Both the United States and Virgin Islands Statutes
 
 
 20
 Ottley also argues that the government abused its prosecutorial discretion by prosecuting him under both the United States Code and Virgin Islands Code. Although we would not frame the issue in terms of prosecutorial misconduct, we agree with Ottley that the conviction and sentencing of him under both the United States and Virgin Islands statutes present serious problems.
 
 
 21
 In Dowling, this court held that the Virgin Islands and the federal government are considered one sovereignty for the purposes of determining whether an individual may be punished under both Virgin Islands and United States statutes for a similar offense growing out of the same occurrence. 633 F.2d at 669. The Dowling court concluded that such multiple punishments are impermissible.[5] Id. In assessing whether the prohibition recognized in Dowling applies in the present case, we are guided by the test enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See United States v. Alston, 609 F.2d 531, 534 (D.C.Cir.1979) (Blockburger test applies in determining whether defendant was properly convicted and sentenced under both United States and District of Columbia criminal statutes). Specifically, we must ask whether the provisions of the United States statutes and the provision of the Virgin Islands statute under which Ottley was convicted each requires "proof of a fact which the other does not." See Blockburger, 284 U.S. at 304, 52 S.Ct. at 182; see also Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (Blockburger provides established test for determining whether two offenses are sufficiently distinguishable to permit imposition of cumulative punishment).
 
 
 22
 Ottley was convicted of conspiracy to import and distribute cocaine and marijuana in violation of 21 U.S.C. Secs. 846, 963 (1982) and conspiracy to traffic in cocaine and marijuana in violation of V.I.Code Ann. tit. 19, Sec. 609 (1976). In order to determine whether he was properly convicted and sentenced under all three of these statutes, we must apply the Blockburger test to the criminal statutes underlying the conspiracy offenses. Under the Virgin Islands Code, the underlying substantive offenses of trafficking in cocaine and marijuana are defined in V.I.Code tit. 19, Sec. 614a(a)(1)(C), (a)(3)(C) (Supp.1984).[6] The definitions of the underlying substantive offenses of importing and distributing cocaine and marijuana of the United States Code are set forth in 21 U.S.C. Secs. 841(a), 952 (1982).[7] After comparing the United States substantive offenses with those under the Virgin Islands Code, we conclude that the two sets of offenses are not sufficiently distinct to pass the Blockburger test.[8]
 
 
 23
 Because the crimes of which Ottley was convicted do not meet the Blockburger test, his sentences under the Virgin Islands and United States statutes must be vacated, even though they were to run concurrently with each other. See, e.g., Dowling, 633 F.2d at 668; Bradsby, 628 F.2d at 905; United States v. Stewart, 523 F.2d 1263, 1264 (2d Cir.1975). The policy followed in this circuit, however, is to leave his convictions under both sets of statutes intact. See Dowling, 633 F.2d at 670; United States v. Gomez, 593 F.2d 210, 215-17 (3d Cir.), cert. denied, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979). Accordingly, we will remand with instructions to the district court to vacate Ottley's sentences and to impose a general sentence on his convictions under 21 U.S.C. Secs. 846, 963 and V.I.Code Ann. tit. 19, Sec. 609. See Dowling, 633 F.2d at 670; Gomez, 593 F.2d at 219.[9] In fashioning the general sentence, the district court should note that under the Supreme Court's decision in Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), a sentencing court is prohibited from imposing a special parole term under 21 U.S.C. Sec. 846. See id. at 400-01, 100 S.Ct. at 2258-59.
 
 
 24
 Finally, we must consider whether appellant Brathwaite is entitled to relief from his multiple sentences despite his failure to raise the issue on appeal. We are persuaded, as was the court in Bradsby, that to afford one coconspirator relief from multiple sentences without extending the same relief to another coconspirator who received identical sentences would be "at best unseemly and at worst a miscarriage of justice." See Bradsby, 628 F.2d at 905; cf. United States v. Rosenbarger, 536 F.2d 715, 722 (6th Cir.1976) (if sentences are imposed on each count of multiplicitous indictment, defendant is not forced to serve erroneous sentence because of any waiver in failing to object to indictment prior to trial), cert. denied, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). We will therefore afford Brathwaite the same relief that we extend to Ottley.
 
 III.
 
 25
 For the foregoing reasons, we will remand this case to the district court with instructions that the court vacate both appellants' sentences under 21 U.S.C. Secs. 846, 963 and V.I.Code Ann. tit. 19, Sec. 609. In addition, we direct the district court to resentence the appellants with general sentences and commit the appellants to the custody of the Attorney General of the United States for the execution of these sentences.[10]
 
 
 
 [1]
 There is a distinction between "conspiracy" as a crime and the coconspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E). Conspiracy as a crime encompasses more than mere joint enterprise. United States v. Trowery, 542 F.2d 623, 626 (3d Cir.1976). The coconspirator provision in Rule 801(d)(2)(E), however, is merely a rule of evidence founded on the rationale "that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not." Id
 
 
 [2]
 These acts may be considered as independent evidence because they were not, in themselves, intended as a means of expression. See Lutwak v. United States, 344 U.S. 604, 618, 73 S.Ct. 481, 489, 97 L.Ed. 593 (1953); 4 J. Weinstein & M. Berger, Weinstein's Evidence p 801(d)(2)(E), at 801-229 (1981)
 
 
 [3]
 We find no merit in appellant Ottley's assertions that the prosecution failed to establish the essential elements of the crime of conspiracy and that the trial court improperly charged the jury on these elements. Likewise, we dismiss as spurious Ottley's argument that the prosecution did not meet its burden of proof because the testimony of Grant and Brock was rendered incompetent by the existence of qualifying words in their answers and that the trial court improperly "bolstered" Grant's testimony
 
 
 [4]
 Ottley apparently raises the same "chain of custody" contention for the transcripts of the tape recordings, which were also admitted into evidence. We similarly hold that the trial court did not err in admitting the transcripts
 
 
 [5]
 The sentences that the Dowling court reviewed were imposed for bank robbery and the Federal Bank Robbery Act, 18 U.S.C. Sec. 2113 (1976), was therefore involved. Nevertheless, courts have espoused the principle recognized in Dowling in non-bank robbery contexts. See, e.g., United States v. Bradsby, 628 F.2d 901 (5th Cir.1980); United States v. Umans, 368 F.2d 725, 730 (2d Cir.1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967)
 
 
 [6]
 Section 614a(a)(1)(C), (3)(C) provides as follows:
 (a) Notwithstanding any other provision of law:
 (1) Any person who knowingly sells, manufactures, delivers, or brings into this Territory, or who is knowingly in actual or constructive possession of, in excess of 50 pounds of marijuana is guilty of a felony which shall be known as "trafficking in marijuana". If the quantity of marijuana involved:
 ....
 (C) is 1,000 pounds or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and pay a fine of $200,000.
 ....
 (3) Any person who knowingly sells, manufacturers, delivers, or brings into this Territory, or who is knowingly in actual or constructive possession of 6 grams or more of cocaine or of any mixture containing cocaine, as described in Schedule II(a)(4) of section 595(b) of this chapter, is guilty of a felony which shall be known as "trafficking in cocaine". If the quantity involved:
 ....
 (C) is 200 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and to pay a fine of $250,000.
 
 
 [7]
 Section 841(a) provides as follows:
 (a) Unlawful acts
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
 (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
 Section 952 provides, in pertinent part, as follows:
 (a) Controlled substances in schedule I or II and narcotic drugs in schedule III, IV, or V; exceptions
 It shall be unlawful to import into the customs territory of the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter....
 ....
 (b) Nonnarcotic controlled substance in schedule III, IV, or V
 It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any nonnarcotic controlled substance in schedule III, IV, or V....
 
 
 [8]
 We note that our comparison is in the abstract, rather than within the context of the facts of this particular case. See, e.g., Government of Virgin Islands v. Joseph, 765 F.2d 394, 396 (3d Cir.1985)
 The government emphasizes the distinction that the Virgin Islands statute contains a minimum quantity requirement whereas the United States statute does not. This argument does not change our conclusion because in any joint prosecution arising out of the same transaction in which the Virgin Islands quantity requirement is met, the United States conviction will be indistinguishable from the state conviction.
 
 
 [9]
 The district court is constrained to impose a general sentence not to exceed the maximum permissible sentence on that conviction that carries the greatest maximum sentence. See Dowling, 633 F.2d at 670; Gomez, 593 F.2d at 219
 Instead of vacating the sentences and remanding with instructions to impose a general sentence on the 21 U.S.C. and 19 V.I.C. convictions, Judge Becker would hold that the convictions under both sets of statutes cannot stand. He would therefore permit the government to elect which conviction will be vacated for each appellant; he would then affirm the remaining conviction and direct the district court to resentence each appellant on that conviction. Judge Becker does not believe that this course is inconsistent with Gomez, 593 F.2d at 219, which dealt with different facets of a (single) federal statutory scheme. He concedes that the majority's view that the sentences need not be vacated is consistent with Dowling, 633 F.2d at 670, and that his position is inconsistent with what the Court did in that case. However, he notes that this point was not addressed in Dowling. At all events, Judge Becker believes that the better view is that followed by the Fifth Circuit, see United States v. Bradsby, 628 F.2d 901 (5th Cir.1980), and the Second Circuit, see United States v. Umans, 368 F.2d 725, 730 (2d Cir.1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), i.e., that where convictions are multiplicitous or, in current parlance, where the dual prosecution "flunks" the Blockburger test, vacatur of the "surplus" conviction and resentence on the remaining one is the appropriate remedy, not merely vacatur of sentence. Judge Becker believes that the possibility of collateral consequences of multiple convictions under the U.S. Parole Commission guidelines and the forthcoming sentencing guidelines provided for by the Sentencing Reform Act of 1984, Sec. 211 et seq., 18 U.S.C. Sec. 3551 note, especially militate in favor of the Fifth and Second Circuit approach. And, even if there are not collateral consequences, Judge Becker believes that the very existence of "surplus" convictions unduly complicates the presumptive parole release or sentence determination inquiry. He also believes that the "surplus" conviction may unfairly disadvantage an offender in a future case. Judge Becker does not believe that his position is foreclosed by Dowling; if it is, however, he believes that the Court in banc should reconsider the matter. For the reasons set forth in this footnote, Judge Becker does not join in the judgment of the Court.
 
 
 [10]
 See Dowling, 633 F.2d at 670-71