

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-2003

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 02-2928

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Williams" (2003). *2003 Decisions.* Paper 229.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-2928 and 02-3109

UNITED STATES OF AMERICA

v.

GEORGE KEITH WILLIAMS, JR.,
a/k/a KEVIN RICHARDSON
Appellant No. 02-2928

UNITED STATES OF AMERICA
Appellant No. 02-3109

v.

GEORGE KEITH WILLIAMS, JR.,
a/k/a KEVIN RICHARDSON

Appeals from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 00-cr-00164)
District Judge: Honorable William L. Standish

Argued May 13, 2003

Before: RENDELL, SMITH and ALDISERT, *Circuit Judges*

(Filed September 18, 2003)

Karen S. Gerlach [ARGUED]
Office of the Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
*Counsel for Appellant/Cross Appellee*

Bonnie R. Schlueter [ARGUED]
James H. Love
Office of the United States Attorney
633 U.S. Post Office and Courthouse
Pittsburgh, PA 15219
*Counsel for Appellee/Cross Appellant*

## OPINION OF THE COURT

RENDELL, *Circuit Judge*.

George Keith Williams appeals his conviction for carrying a firearm in violation of 18 U.S.C. § 924(c). The Government produced evidence that Williams threw the firearm from his vehicle during a police chase following a bank robbery. Williams challenges both the sufficiency of the evidence supporting his conviction and the District Court's instructions to the jury. The Government cross-appeals, challenging the District Court's decision to grant Williams an offense-level reduction for acceptance of responsibility as to a separate count. We will affirm the District Court in all respects.

## I.  Background

The facts established at trial, taken in the light most favorable to the Government, are straightforward. On August 16, 2000, Williams, dressed as a woman, entered the Parkvale Savings Bank in North Huntingdon, Pennsylvania, and handed a brown bag to the bank teller together with a note that read: "Give me your money. I don't want to hurt you." The teller gave Williams $822, including "bait" money, which triggered an alarm. Williams then fled from the scene in a stolen car and led police on a seven-mile high-speed chase through residential

neighborhoods. After colliding with multiple vehicles, Williams ultimately jumped out of the moving car just before it crashed into the side of an apartment building. Before he exited the car, Williams threw a black metallic object out of the window. Williams fled on foot, but was apprehended by police shortly thereafter. While investigating the scene, police officers found a loaded gun ten feet from the getaway car.

Although Williams initially denied involvement in the bank robbery — and explained his flight from the police as a reaction to having an illegal gun in the car — he was apprehended with a paper bag containing $822, including the "bait" money. The police found a wig and other clothing, in the car, matching the description of that worn by the robber, and they also found Williams's fingerprints on the bank demand note. Regarding the gun, an investigating FBI agent testified that "[Williams] had said he had bought the gun on the street obviously before and that he carried it for protection . . . . [H]e was in another neighborhood other than his own so he had carried it the night before so he had had it with him."

A grand jury indicted Williams on two counts, charging him with (1) bank robbery by force and intimidation in violation of 18 U.S.C. § 2113(a), and (2) carrying a firearm during and in relation to a crime of violence and possessing a firearm in furtherance of that crime of violence in violation of 18 U.S.C. § 924(c). Williams pled guilty to the § 2113(a) charge, but went to trial on the § 924(c) charge. The first trial ended in a mistrial due to a hung jury, but on retrial the jury found Williams guilty. At sentencing, the District Court, over the objection of the Government, granted Williams's request for an offense-level reduction for acceptance of responsibility. The Court sentenced Williams to 66 months on count one, and a consecutive term of 60 months on count two.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 1291. Williams makes four arguments on appeal: (1) the evidence was insufficient to sustain a conviction under § 924(c); (2) the District Court incorrectly instructed the jury that a gun is "carried" in violation of § 924(c) if it

merely "emboldens" the defendant during the escape; (3) the District Court incorrectly instructed the jury that a gun is "possessed" in violation of § 924(c) if it merely "emboldens" the defendant during the escape; and (4) the District Court incorrectly instructed the jury as to what satisfies the "carry" elements under § 924(c). As noted, the Government cross-appeals, arguing that the District Court erred in granting Williams an offense-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

## II. Sufficiency of the Evidence

We first consider whether there is sufficient evidence to sustain a conviction under 18 U.S.C. § 924(c). When reviewing whether the evidence was sufficient to convict, "[w]e must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (internal quotation marks and citation omitted).

Section 924(c) provides in pertinent part:

[A]ny person who, *during and in relation to any crime of violence* or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, *uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm*, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime — [be sentenced to a certain number of years depending on the facts of the crime] . . . .

18 U.S.C. § 924(c) (emphasis added). Courts have noted that § 924(c) has three alternative prongs: the "use" prong, the "carry" prong, and the "possession" prong. *See Muscarello v. United States*, 524 U.S. 125, 136 (1998) (discussing the "use" and "carry" prongs); *United States v. Loney*, 219 F.3d 281, 287 (3d Cir. 2000) (discussing the "use," "carry," and "possession" prongs). The District Court charged the jury in the alternative, under the "carry" and

"possession" prongs. The jury returned a general guilty verdict.

Williams presents various technical arguments based on the elements of § 924(c). His main argument is that there was not sufficient evidence for the jury to find that he either "carried" or "possessed" a gun. In the alternative, he urges that there was not sufficient evidence to find that he either carried a gun "during and in relation to" a crime of violence or possessed a gun "in furtherance of" a crime of violence as required by the statute. We will first address his arguments as to the "carry" prong.

We have little difficulty rejecting Williams's argument that there was not sufficient evidence for the jury to have concluded that Williams "carried" a gun. In *Muscarello*, the Supreme Court explained that "carries" in § 924(c) is not limited to the carrying of firearms directly on the person. *Id.* at 126-27. Rather, the Court held that, "[the term] also applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Id.*; *see also United States v. Eyer*, 113 F.3d 470, 476 (3d Cir. 1997) (stating that the presence of a loaded gun in a car's front console constituted "carrying" under § 924(c)). This explication certainly encompasses the situation here, where there was sufficient evidence from which the jury could find that Williams carried a gun in the getaway car during his flight from the bank. Not only did he tell police officers that he ran from them because he had an illegal gun, but a pursuing police officer testified to seeing Williams throw a black metallic object from his car, and a gun was subsequently found ten feet away from the car.

Williams's alternative argument as to the "carry" prong, however, cannot be rejected so easily. He contends that, even if he "carried" the firearm, the evidence did not establish that he carried it "during and in relation to" a crime of violence — as further required by § 924(c) — given that there is no evidence that he had the gun with him in the bank when he committed the robbery. Understanding that the underlying crime to which Williams pled guilty, bank robbery under the first paragraph of § 2113(a),[1] is a

---

1. Section 2113(a) provides:

 Whoever, by force and violence, or by intimidation, takes or

crime of violence, we must only determine whether Williams's carrying of the firearm was "during and in relation to" the bank robbery. *See United States v. Johnson*, 962 F.2d 1308, 1312 (8th Cir. 1992).

We begin with the "in relation to" requirement of the "carry" prong. *See* 18 U.S.C. § 924(c). As the Supreme Court noted in *Smith v. United States*, 508 U.S. 223, (1993), regarding § 924(c), "[t]he phrase 'in relation to' is expansive." *Id.* at 237. In *Smith*, the Court used the dictionary to define "in relation to" as: " 'with reference to' or 'as regards.' " *Id.* Though the Court declined to chart the specific boundaries of that definition, it stated that, in order to be carried "in relation to" the offense, the presence of the gun could not be the result of accident or coincidence, and the gun must have had "some purpose or effect" as to, and must have at least " 'facilitate[d], or [had] the potential of facilitating,' " the underlying offense. *Id.* at 238 (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir. 1985) (Kennedy, J.)).

In *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999), the Court of Appeals for the Sixth Circuit examined the breadth of the phrase "in relation to" in light of *Smith*. The court stated that, because of the broad interpretation

---

attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting any such bank or such savings and loan association and in violation of any statute of the United States, or any larceny —

Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

afforded to § 924(c) by the Supreme Court, instead of focusing on the defendant's intentions in pursuing the underlying offense, a court should

> examine the 'totality of the circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime'. . . . Thus, a conviction under § 924(c)(1) will withstand appellate review if the evidence is sufficient to support a finding that the defendant intended to have the firearm available for use during or immediately following the transaction, or if it facilitated the crime . . . .

*Id.* at 971 (quoting and citing *United States v. Brown*, 915 F.2d 219, 226 (6th Cir. 1990)). We find this assessment persuasive.

In light of the broad reading afforded to § 924(c) by the courts, the requirements of the "in relation to" clause are clearly satisfied in this case. Williams admitted to putting a firearm in his car the night before the robbery; the gun was within reach during his flight from the bank; and he undoubtedly was aware of its presence in the car. Even crediting Williams's explanation that he had put the gun in the car for protection in a strange neighborhood the night before the robbery, the jury could have concluded that the presence of the gun was not the result of accident or coincidence, and that it had the "potential of facilitating" the bank robbery. Although Williams did not actively engage the firearm, there are sufficient facts from which the jury could infer that his carrying of a loaded gun within reach in the getaway car occurred "in relation to" the bank robbery.

Williams next contends that, even if the firearm was "carried in relation to" the bank robbery, it was not carried "during" the bank robbery as § 924(c) also requires, because the escape or the "taking away" was not part of the bank robbery itself.[2] As noted, there was sufficient evidence

---

2. As we discuss more fully later below, Williams also challenges the District Court's charge to the jury that escape is part of bank robbery.

only for the jury to have found at trial that Williams "carried" the gun while escaping in the getaway car. Therefore, the issue of whether that part of the incident occurred "during" the bank robbery is dispositive.

Our case law has consistently treated escape as part and parcel of a bank robbery, including federal bank robbery as defined in 18 U.S.C. § 2113 (the offense that underlies Williams's § 924(c) charge). For instance, in *United States v. Bamberger*, 460 F.2d 1277 (3d Cir. 1972), we found that a shooting that occurred a few blocks away from a bank robbery was "sufficiently related in time and circumstances to the actual robbery" to be part of the robbery itself. *Id.* at 1278. Although the defendant in that case was charged with aiding and abetting, the language of our opinion regarding the duration of the offense swept broadly and was not restricted to an aiding and abetting scenario.[3] We later relied on *Bamberger* in *Government of the Virgin Islands v. Dowling*, 633 F.2d 660 (3d Cir. 1980), where we concluded that assaults occurring during "hot pursuit" of a robbery occur "in committing" the crime. *Id.* at 668-69. Consequently, we indicated that the assaults involved in that case — "three or more bursts of gunfire [issued from the getaway car after leaving the bank], separated in time, [which] occurred almost immediately after the robbery in the course of a 'hot pursuit'" fell "within the scope of the federal Bank Robbery Act, 18 U.S.C. § 2113(d)," and thus within § 2113(a) as well.[4] *Id.* at 668-69.

---

3. The "aiding and abetting" statute provides in pertinent part:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

18 U.S.C. § 2(a).

4. Section 2113(d) provides:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d). Though *Bamberger* and *Dowling* referred to § 2113(d) — and not § 2113(a), the offense underlying Williams's § 924(c) charge — the distinction is of no consequence here. Section 2113(a) is a lesser-included offense of § 2113(d). *United States v. Beckett*, 208 F.3d 140, 149 (3d Cir. 2000); *see also Dowling*, 633 F.2d at 668.

The other courts of appeals that have considered whether escape is a part of the bank robbery also have determined that it is. *See, e.g., United States v. Ashburn*, 20 F.3d 1336, 1341 (5th Cir. 1994) (noting, with approval, that "many courts . . . have found that the escape phase of the robbery can be considered part of the offense of bank robbery under various circumstances."), *relevant part reinstated*, 38 F.3d 803 (*en banc*); *United States v. Dinkane*, 17 F.3d 1192, 1200 (9th Cir. 1994) (noting that the escape phase is a part of bank robbery); *United States v. Muhammad*, 948 F.2d 1449, 1456 (6th Cir. 1991) ("As the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight."); *United States v. McCaskill*, 676 F.2d 995, 1000 (4th Cir. 1982) (concluding that the escape phase is a part of the bank robbery); *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977) ("[T]he robbery is not a consummate transaction until the immediate removal phase comes to a halt . . . ."); *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1970) ("[T]he escape phase of a crime is not . . . an event occurring 'after the robbery.' It is part of the robbery." (internal quotation marks and citation omitted)), *vacated on other grounds, Schreiner v. United States*, 404 U.S. 67 (1971); *see also United States v. Barlow*, 470 F.2d 1245, 1252-53 (D.C. Cir. 1972) ("The crime of larceny obviously continues as long as the asportation continues . . . .").

In fact, in considering the specific issue before us, the Courts of Appeals for the Second and Eighth Circuits have determined that flight from a bank robbery is part of the bank robbery crime for the purposes of upholding a § 924(c) conviction. As the Eighth Circuit reasoned:

> A bank robbery does not necessarily begin or end at the front doors of the bank . . . . It simply cannot be gainsaid that reasonable jurors could conclude that the presence of a loaded shotgun in the getaway car from a bank robbery in some way effectuates the escape and thereby the robbery — if by nothing more than the emboldening of the perpetrators.

10

*United States v. Pate*, 932 F.2d 736, 738 (8th Cir. 1991); *see also United States v. Reid*, 517 F.2d 953, 965 (2d Cir. 1975) (concluding that the "escape phase" is part of the bank robbery for purposes of § 924(c)).

Against this backdrop of overwhelming consensus, we note that, as the Government advised at oral argument, in *United States v. Carter*, 530 U.S. 255 (2000), the Supreme Court held that the strict elements of a federal bank robbery offense under 18 U.S.C. § 2113(a) do not include "taking away." *Id.* at 262. In *Carter*, the Supreme Court examined whether 18 U.S.C. § 2113(b) was a lesser included offense of § 2113(a) and thus whether Carter was entitled to a jury instruction on the lesser included offense. *Id.* at 258-59. The Court concluded that § 2113(b) was not a lesser included offense for a number of reasons, one of which was that § 2113(b) included "taking away" as an element, but § 2113(a) did not. *Id.* Given that Williams carried the gun only as the stolen property was being "taken away" during the escape phase of the bank robbery, does *Carter* dictate that we conclude that the gun here was not carried "during" the bank robbery?

Were we to take a "categorical approach" to the "during" requirement of § 924(c) here, we might find *Carter*, albeit addressing a different issue, controlling because it articulates the elements of the underlying conduct — bank robbery under 18 U.S.C. § 2113(a) — to which Williams pled guilty. "The categorical approach requires the court to look only to the fact of conviction and the statutory definition of the prior offense" and not to the facts of the case. *United States v. Jones*, 332 F.3d 688, 691 (3d Cir. 2003). Thus, because the elements of § 2113(a) do not include the "taking away," it could be argued that the categorical approach would require us to conclude that the carrying of the gun did not occur "during" the bank robbery.

But we think resort to the categorical approach is not necessary or advisable here. In the statutory context, use of a categorical approach has been confined mainly to predicate offenses for purposes of determining whether the offense qualifies for a sentencing enhancement provision. For instance, in *Taylor v. United States*, 495 U.S. 575, 589,

600-02 (1990), the Court applied the categorical approach to determine whether the defendant's prior convictions for "burglary" under state law qualified as a "violent felony" under 18 U.S.C. § 924(e)(2)(B) and thus could be used for sentencing-enhancement purposes under 18 U.S.C. § 924(e)(1). In *United States v. Richardson*, 313 F.3d 121, 122 (3d Cir. 2002), we applied it to determine whether the defendant had used a weapon in prior juvenile offenses, also for the purposes of determining whether those offenses could be used to enhance a sentence. This is consistent with how we have employed the approach elsewhere. *See, e.g.*, *Jones*, 332 F.3d at 693-94 (applying the categorical approach to determine whether a prior juvenile adjudication constituted a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)); *Francis v. Reno*, 269 F.3d 162, 171 (3d Cir. 2001) (using the categorical approach to determine if a conviction for vehicular homicide fell within the meaning of a "crime of violence" under 18 U.S.C. § 16(b)). Likewise, in *Carter*, the analysis of whether 18 U.S.C. § 2113(b) was a lesser included offense of 18 U.S.C. § 2113(a) necessitated and turned on a matching of the elements of each offense. 530 U.S. at 260-62 (citing the holding of *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). Thus, the Court focused on the elements needed to prove bank robbery under § 2113(a). *Id.* at 267-74.

The issue here is altogether different. In *Carter*, the Court did not speak to, let alone anticipate, this issue, and there is no indication that the Court meant to extend its holding in *Carter* beyond the scope of the precise question before it. The Court was concerned with what § 2113(a) "required" and determined that it did not *require* taking away; it was not concerned with the duration of the offense or with whether the taking away may be considered a part of the robbery. *Id.* at 258, 261, 272. Here, we are not called upon to determine whether a crime "fits" within a category of offenses, or within the definition of a specific word or phrase. Rather, we must decide if, under the circumstances, a gun was carried "during and in relation to" a crime of violence. We view a reasonable reading of "during and in relation to" a crime of violence as requiring a common sense, temporal approach to the specific facts,

rather than a categorical approach. Therefore, we decline to look only at the offense under § 2113(a) to determine whether Williams carried the gun "during" the crime.

That § 924(c) should be interpreted to encompass acts committed during the escape phase of a bank robbery is also supported by the legislative history of § 924(c), other Supreme Court precedent, the ordinary meaning of "robbery," leading treatises, and the Model Penal Code. First, the provision's chief legislative sponsor indicated the broad scope of the statute. Specifically, he stated that the purpose of the provision was to "persuade the man who is tempted to commit a Federal felony to leave his gun at home." 114 Cong. Rec. 22231 (1968) (Rep. Poff) (cited in *Muscarello*, 524 U.S. at 132). And, in discussing the scope of the "carry" prong, the Supreme Court has noted that, although the "during and in relation to" phrase would provide a limiting effect to that prong, "Congress added [the] words [during and in relation to] in part to prevent prosecution where guns 'played' no part in the crime." *Muscarello*, 524 U.S. at 137. Here, the jury could have inferred from the presence of a loaded firearm within Williams's reach in the getaway car that he at least carried the gun in the car to protect the proceeds of the bank robbery. It follows that the jury could have found that the firearm had a "part" in the bank robbery, even though there is no evidence that Williams had it with him in the bank.

Moreover, just as the Supreme Court in *Muscarello* looked at the ordinary meaning of the word "carry" in determining its scope, we look to the ordinary meaning of the word "robbery." *See Muscarello*, 524 U.S. at 127-28. We believe that, under its ordinary meaning, a bank robbery is not concluded when the offender pockets the goods, but continues to the point where the robber has removed and relocated the goods. This "ordinary meaning" is not only consistent with the overwhelming agreement of courts of appeals, as we discussed above, but is also consistent with at least two of the leading criminal law treatises, both of which note that the "taking away" or the "carrying away" is normally considered to be a part of robbery. *See* Charles E. Torcia, *Wharton's Criminal Law* § 469 (14th ed. & Supp. 1995); Wayne R. LaFave, 3 *Substantive Criminal Law* § 20.3

(2d ed. 1999). Likewise, the Model Penal Code states that an individual commits robbery if "in the course of committing a theft" he inflicts or threatens injury, or commits or threatens to commit a felony, which the Code clarifies by stating that: "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or *in flight after the attempt or commission*." Model Penal Code § 222.1(1) (2002) (emphasis added).

Lastly, we note that our interpretation avoids undesirable results that would flow from finding that flight is not part of a robbery. For instance, if flight were not included, we would have to find an arbitrary point delineating when and where the crime ends. Would the crime end the instant the bank robber took the money from the teller's hands? Would it end the instant the robber stepped outside the door of the bank? Or, rather, would it end when he stepped into the getaway car or began running? It would defy common sense to suggest that Congress meant to provide that an individual who quietly and peacefully demands money at a bank counter, but has a gun hidden on his person, is covered under § 924(c), but an individual who goes on a shooting spree after leaving the bank in order to effectuate the robbery is not. Obviously, escape does end at some point, such that the concept of "during and in relation to" will have some boundaries as a matter of common sense. But we believe that it is a fact-based inquiry, and, in light of the immediacy of Williams's apprehension and the weapon's discovery, we need not draw that line here. *See Bamberger*, 460 F.2d 1277, 1278-79 ("While there must of course come a point when the statute no longer covers the activities of a bank robber, we think that point was not reached here.").

Accordingly, we conclude that flight may be considered a part of a bank robbery under § 924(c), under certain circumstances, and that this is one of those circumstances. Even though Williams "had committed all elements necessary to constitute an indictable offense insofar as he personally was concerned[,] . . . he apparently considered that further asportation was necessary in order to secure the fruits of the crime." *Barlow*, 470 F.2d at 1251-52. Therefore, "[t]he crime itself was incomplete in the sense

that the actual offense set in motion by [him] was still progressing and had not been terminated or finished." *Id.* at 1252. Under these facts, there is sufficient evidence from which the jury could have found beyond a reasonable doubt that Williams's flight in this case — which was temporally and proximately related to the bank robbery — was sufficiently related to the robbery so that Williams was carrying the gun "during" the robbery.[5]

Because we find the evidence sufficient to affirm his conviction under the "carry" prong of § 924(c), we need not address the merits of his argument with regard to the "possession" prong. *See Griffin v. Turner*, 502 U.S. 46, 60 (1991) (concluding that a reviewing court does not have grounds to reverse a conviction where the evidence is insufficient to support a conviction on one count, but is sufficient with regard to an alternative count, and it is unclear on which one the jury convicted); *United States v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1992) (stating that where the jury is charged under two prongs of § 924(c) and "the jury returned a general verdict, we must affirm if the evidence was sufficient to support either theory").

### III.  Jury Instructions

We next address Williams's arguments regarding the District Court's instructions to the jury. He argues that the District Court incorrectly instructed the jury that: (1) a gun is "carried" in violation of § 924(c) if it merely "emboldens"

---

5. Williams also argues that the District Court incorrectly instructed the jury that escape is part of bank robbery. The jury instruction provided in pertinent part:

> [A] bank robbery does not necessarily begin or end at the front doors of the bank. The escape phase of a bank robbery is not an event occurring after the bank robbery. Rather, the escape phase of a bank robbery is part of the robbery. The escape phase of a bank robbery extends at least to the immediate pursuit of a defendant following his or her physical departure from the bank.

Given our conclusion that the escape phase may be considered a part of the crime of bank robbery for the purposes of § 924(c), it follows that we find there was no error in the trial judge's instruction regarding the duration of the bank robbery.

the defendant during his escape; (2) a gun is "possessed" in violation of § 924(c) if it merely "emboldens" the defendant during his escape; and (3) the "carry" prong of § 924(c) can be satisfied by "constructive possession."[6] We conclude that the District Court did not commit reversible error.

We review *de novo* the District Court's interpretation of the statutory requirements and whether the District Court correctly charged the jury. *United States v. Urban*, 140 F.3d

---

6. While in Part II we were only required to address the "carry" prong of § 924(c), given that there we were dealing with a claim of insufficiency of the evidence, we must now deal with claims of legal error, and thus, we will address Williams's arguments with regard to both prongs. *See Griffin*, 502 U.S. at 55-56. In *Griffin*, the Supreme Court declined to overrule *Yates v. United States*, 354 U.S. 298 (1957), in which the Court had refused to uphold convictions of conspiracy where one of the possible bases of conviction was legally inadequate. 502 U.S. at 55-56. The Court in *Griffin* explained the distinction in treatment between insufficient evidence and legal error by stating:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

502 U.S. at 59. In *United States v. Syme*, 276 F.3d 131 (3d Cir. 2002), we concluded that "neither the indictment nor the District Court's instructions contained a 'mistake about the law' . . . that, under *Griffin*, would require reversing the counts in question." *Id.* at 148. As we stated:

> [I]f the evidence is insufficient to support a conviction on one alternative theory in a count but sufficient to convict on another alternative theory that was charged . . . in the same count, then a reviewing court should assume that the jury convicted on the factually sufficient theory and should let the jury verdict stand . . . . However, under *Griffin*, if one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory.

*Id.* at 144 (citations omitted).

229, 231-32 (3d Cir. 1998). We review a court's choice of wording for abuse of discretion. *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir. 1987). As we stated in *Goldblatt*:

> It is well settled that a single jury instruction may not be evaluated in artificial isolation; rather, it must be evaluated in the context of the overall charge . . . . A trial which culminates in a judgment of conviction is the combined result of witnesses' testimony, counsels' arguments, entry of exhibits into evidence and the judge's instructions to the jury. Thus, 'the process of instruction itself is but one of several components of the trial which may result in a judgment the conviction.'

*Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Williams's first argument is that a gun is not carried in violation of 18 U.S.C. § 924(c) if it merely "emboldens" an individual during an escape. The charge to the jury provided in pertinent part:

> It is not sufficient to prove that the defendant carried the weapon if all the government has proven is that the firearm was transported in a vehicle in which the defendant was riding. There must be proof that he knew of the weapon's presence and had the power and intention to exercise control of the weapon so that it was available for his use in the commission of the crime if the need arose. A firearm is available for such use in [sic] the defendant keeps the firearm available to provide security for the robbery, its fruits or proceeds, or *to aid or embolden the defendant in making his escape.*

In all, the charge to the jury with regard to the "carry" prong constituted more than two pages of the District Court's instruction to the jury, and did not rest solely on the word "emboldening." In the instruction, the District Court closely tracked the language invoked by the Supreme Court in *Smith*. 508 U.S. at 237-38. Importantly, the trial judge also instructed the jury that:

> If you find that the defendant carried a firearm, you must determine whether the carrying of the firearm

> was during and in relation to the unarmed bank robbery. During and in relation to means that the firearm must have had some purpose or effect with respect to the unarmed bank robbery. The firearm must have at least facilitated or had the potential of facilitating the unarmed bank robbery.

Given our standard of review, we need not determine specifically whether "emboldening" standing alone would have been reversible error. We look at the totality of the District Court's instruction, *see Goldblatt*, 813 F.2d at 623, and in doing so here, find no reversible error. The trial judge's use of the word "emboldening" was included as part of a thorough instruction that sufficiently tracked language used by the Supreme Court.

Williams next argues that the trial judge incorrectly charged the jury that "emboldening" satisfies the "possession" prong of § 924(c). The instruction provided in pertinent part:

> In order to prove that the defendant possessed a firearm in furtherance of the unarmed bank robbery, the government must prove beyond a reasonable doubt that the defendant had possession of the firearm and that such possession was in furtherance of the unarmed bank robbery. Possession means that the defendant either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the place where the firearm was located. To possess a firearm in furtherance of the unarmed bank robbery means that the firearm helped forward, advance or promote the commission of the crime. A firearm is possessed in furtherance of an unarmed bank robbery if it is possessed to provide security for the robbery, its fruits or proceeds, or *to aid or embolden the defendant in making his escape.*

As with the instruction surrounding the "carry" prong, the charge further provided detailed direction that "[t]he mere possession of the firearm at the scene of the crime is not sufficient under this definition," and that "[t]he firearm

must have played some part in furthering the crime in order for this element to be satisfied."

As there is little case law detailing the scope of the "in furtherance of" requirement of the "possession" prong, we will follow the approach taken by the Supreme Court in *Smith* and *Muscarello*, and look to the relevant dictionary definitions. *See Smith*, 508 U.S. at 237-38; *Muscarello*, 524 U.S. at 128. *Black's Law Dictionary* defines "furtherance" as "act of furthering, helping forward, promotion, advancement, or progress." *Black's Law Dictionary* 675 (6th ed. 1990). Webster's defines it as "a helping forward: advancement, promotion." *Webster's Third New International Dictionary* 924 (1993). And Webster's defines "embolden" as, "to impart boldness or courage to: instill with boldness, bravery . . . ." *Id.* at 739. Given that in some instances, "instill[ing] with boldness" could "help forward," "promote," or "advance" a bank robbery — as the District Court instructed — and given the overall instruction provided by the District Court, we, again, find no reversible error in this regard.

Williams's third argument regarding the jury instructions is that the District Court incorrectly instructed the jury that the "carry" prong of § 924(c) can be satisfied based on what is commonly termed "constructive possession." *See United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) ("A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession."). The relevant part of the court's charge stated:

> Possession means that the defendant either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the place where the firearm was located.

As Williams did not object to this part of the instruction, we review the charge for plain error, which requires that we must find an error that is plain and that "affects substantial rights" in order to grant relief.[7] *See United*

7. Moreover, Fed.R.Crim.P. 52(b) leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and

*States v. Gambone*, 314 F.3d 163, 183 (3d Cir. 2003); Fed. R. Crim. P. 52. " 'Affected substantial rights' in the context of plain error review 'in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.' " *United States v. Knobloch*, 131 F.3d 366, 370 (3d Cir. 1997) (quoting *Olano*, 507 U.S. at 734 (1993)). In light of the fact that, if the Government's version of events is credited, the obvious location of the gun — namely, within his reach inside the car — fit squarely within the "carry" prong under *Muscarello*, we cannot conceive of how the charge given by the District Court could have prejudiced Williams. We thus no find no plain error in this aspect of the District Court's instruction.

## IV.   Cross-Appeal

The Government cross-appeals, arguing that the District Court erred in granting Williams an offense-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. Williams received the acceptance of responsibility reduction for pleading guilty to the bank robbery charge under § 2113(a), in spite of the fact that he contested the § 924(c) charge. The District Court's "tentative findings" are somewhat cursory, merely noting that the Court came to that conclusion "[a]fter considering the totality of the circumstances."

The District Court referenced the applicable approach, noting that where, as here, a defendant pleads guilty to some counts but goes to trial on others, the Court must assess the "totality of the circumstances" in deciding whether to grant a reduction for acceptance of responsibility. *United States v. Cohen*, 171 F.3d 796, 806

---

the court should not exercise that discretion unless " 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Retos*, 25 F.3d 1220, 1229 (3d Cir. 1994) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

(3d Cir. 1999). While we review findings of fact for clear error, and legal conclusions *de novo*, *Cohen*, 171 F.3d at 802, we are especially deferential to the sentencing court's assessment of whether the defendant accepted responsibility. *See* U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.5 (2002) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. . . [,] the determination of the sentencing judge is entitled to great deference on review.").

The Government presents three arguments as to why the District Court erred in granting an offense-level reduction, which we address in turn. First, the Government contends that District Court failed to take the totality of the circumstances into account, but, instead, focused entirely on the fact that Williams had pled guilty to the bank robbery. Specifically, the Government argues that the District Court failed to take into account that Williams denied "relevant conduct" as defined in Application Note 1(a) of § 3E1.1, which provides in pertinent part that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.1(a). The Government claims that the relevant conduct Williams denied was that he carried a loaded gun in the getaway car.

The Government's reasoning is problematic both in its interpretation of Application Note 1(a) and in its definition of "relevant conduct." The Government wrongly treats the quoted language of Application Note 1(a) as establishing a *per se* bar to the grant of a reduction for acceptance of responsibility. Even if Williams "falsely denie[d], or frivolously contest[ed], relevant conduct" as the Guidelines requires, the Guidelines make clear that this is an "appropriate consideration[ ]" for a court to take into account "[i]n determining whether a defendant qualifies" for the reduction, *id.*, but not the only consideration. *See* U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n. 1(a) (stating that a court is "not limited to" the listed considerations). Further, it is a close question as to whether Williams's conduct even amounted to a "false denial" or a "frivolous

contest" as Application Note 1(a) requires. In addition, the Government seems to ignore the fact that the District Court specifically mentioned Williams's "timely notification of [sic] authorities of his intention to enter a plea of guilty on Count One" — clearly an "appropriate consideration" under the Application Note — as an additional factor it took into consideration. *See* U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n. 1(h).

What is more, it could be argued that the gun activity on which Williams proceeded to trial was not "relevant conduct" as that term is defined under the Guidelines. One of the considerations in determining "relevant conduct" is that it is conduct that affects the Guideline range. *See* U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n. 1(a) (stating that "relevant conduct" is defined in § 1B1.3); *see also United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir. 1997) (referring to § 1B1.3(a) as the "standard of relevant conduct . . . which applies to an offense requiring the grouping of multiple counts"); *United States v. Stephenson*, 895 F.2d 867, 876 (2d Cir. 1990). But § 924(c) specifies a minimum five-year term of imprisonment to run consecutively to any other term. *See* 18 U.S.C. § 924(c)(1)(A)(I) & (D)(2). Under § 3D1.1,[8] this made the § 924(c) charge not subject to

---

8. Section 3D1.1 reads:

    (a) When a defendant has been convicted of more than one count, the court shall:

        (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

        (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

        (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

    (b) *Exclude from the application of § § 3D1.2-3D1.5 any count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment.* Sentences for such counts are governed by the provisions of § 5G1.2(a).

U.S. Sentencing Guidelines Manual § 3D1.1 (emphasis added).

grouping, which, in turn, rendered it not "relevant conduct" for purposes of establishing Williams's sentence. *See* U.S. Sentencing Guidelines Manual § 3D1.1; *see also Stephenson*, 895 F.2d at 876 (stating that an offense not subject to grouping "is excluded from 'relevant conduct' under Section 1B1.3").

*Cohen* is not to the contrary. In that opinion, we discussed a situation similar to that presented here, calling it an "unusual situation" where "the defendant has pleaded guilty to some of the charges against him . . . while going to trial on others." *Id.* at 806. We stated that, in such a case, "the trial judge 'has the obligation to assess the totality of the situation in determining whether the defendant accepted responsibility.'" *Id.* at 806 (quoting *United States v. McDowell*, 888 F.2d 285, 293 n.2 (3d Cir. 1989)). There, we determined that the District Court in assessing the totality of the situation erred in granting an acceptance of responsibility reduction because the defendant had gone to trial on some of the counts that were *grouped* for sentencing purposes. The District Court could not have granted acceptance credit based on the guilty pleas to some counts because the counts were grouped before consideration of such credit, thus eliminating the availability of the reduction for acceptance responsibility. *Id.* ("Were the District Court able to grant a credit for . . . the three . . . charges separately, then we would see no error. However, the Guidelines do not allow for this because multiple counts of conviction must be grouped before an adjustment can be made for acceptance of responsibility."). That situation is not present here.

Next, the Government argues that the District Court disregarded Application Note 2 of § 3E1.1 of the Sentencing Guidelines, which states that a reduction should not be granted for a defendant who proceeds to trial, denies factual elements of guilt, and only admits guilt after a conviction. U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.2. However, the District Court adjusted the offense level only as to count one, and Williams only put the Government to its burden of proof on count two. As noted in *Cohen*, where the counts are not grouped and credit may be granted to them separately, there is no error when the

District Court grants the reduction as to a count that the defendant did not challenge. 171 F.3d at 806 ("Were the District Court able to grant a credit for . . . the three . . . charges separately, then we would see no error."). Therefore, Application Note 2 was inapplicable.

The Government's third argument is equally unavailing. It contends that, because the District Court erred in not applying the obstruction of justice enhancement, it erred in granting the acceptance of responsibility adjustment. That is, in looking at the totality of the situation regarding Williams's acceptance of responsibility, the Government asks us to consider Williams's alleged efforts to obstruct justice. This argument fails because the District Court specifically found there was no obstruction of justice, and the Government has not appealed that finding. We will not now allow the Government to revisit that issue disguised in a "totality of the circumstances" argument.

In sum, we find that, because Williams pled guilty to the bank robbery charge, the reduction in his sentence for acceptance of responsibility with regard to that count was not improper, and, thus, we defer to the District Court.

\* \* \*

Accordingly, we will affirm Williams's conviction and not disturb the sentence meted out by the District Court.

A True Copy:
　　　Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*