**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SOLOMON TRANELL BURTON,

    Defendant-Appellant.

No. 04-7002
(E.D. Okla.)
(D.Ct. No. CR-03-66-P)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is
therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Appellant Solomon Tranell Burton, a federal prisoner represented by counsel, appeals his conviction for using or carrying a firearm during a crime of violence (Count 2), in violation of 18 U.S.C. § 924(c)(1)(A). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm Mr. Burton's conviction and sentence.

## I. Factual Background

The indictment against Mr. Burton charged him with bank robbery (Count 1) and using or carrying a firearm during a crime of violence (Count 2). Mr. Burton entered a plea of guilty to Count 1 for the bank robbery charge and received a sentence of thirty-three months imprisonment. As to Count 2, following a jury trial, Mr. Burton was convicted of using or carrying a firearm during a crime of violence, for which the district court sentenced him to sixty months imprisonment, to run consecutively to his other sentence.

Mr. Burton appeals only his jury conviction for using or carrying a firearm during a crime of violence, and in so doing, contests the use of a jury instruction which allowed the jury to consider escape or flight as a phase of the robbery for the purpose of finding he carried a gun during or in relation to the robbery. The following evidence, relevant to that issue and Mr. Burton's appellate argument,

was introduced at trial.

One customer testified that on June 13, 2003, as she was driving her son to the bank, she nearly hit Mr. Burton with her car in the bank parking lot. She testified Mr. Burton was wearing a black shirt with a backwards number "3" and black wind pants with the seam ripped out in the seat, which was noticeable because the lining was white. Neither she nor her son, who followed Mr. Burton into the bank and stood behind him in line, noticed any bulges in his clothing which might suggest the presence of a gun. The son noticed Mr. Burton wore a black do-rag and cap on his head and black windbreaker pants.

A bank teller testified that, after waiting in line, Mr. Burton walked up to him, said he would like to make a withdrawal, and then slid a handwritten note on the counter, which said "Give me all tha money and <u>you</u> won't get <u>Hurt</u>!!" The bank teller noticed Mr. Burton wore a do-rag and jersey, but did not recall what he wore on the bottom part of his body. Mr. Burton did not display a gun, and the bank teller did not observe a bulge which might be a gun under the loose-fitting jersey. On reading the note, the teller gave Mr. Burton $1,521 in cash. Once Mr. Burton left, the teller activated the bank alarms. Other bank employees testified the last surveillance photograph of the robbery was taken at 11:48:55 a.m., and

that none of the photographs revealed Mr. Burton carried a gun.

The same customer who dropped off and was waiting for her son in the bank parking lot saw Mr. Burton leave the bank with what appeared to be a roll of money in his left pocket, and then saw him start running, but lost sight of him near an alleyway. Police Officer Lance Whitman received information on the bank robber's location and identity, which included his gender, race, and a description of his shirt as black with a backwards "B," which he later acknowledged was a backwards "3." At approximately 11:55 a.m., he saw a man matching the description about one-half mile from the bank. At that time, Mr. Burton wore a black t-shirt with an embroidered "B" on it and black jeans with no rip; no gun was visible and he was sweating "like somebody who had been exerting themselves."

Once Mr. Burton was handcuffed, the officer asked him if he possessed any weapons, to which he answered, "Yeah," and then motioned down toward his waist. Officer Whitman put his hands on Burton's waist, felt a lump, pulled up his shirt, and found tucked in his waistband a loaded .9 mm semi-automatic pistol with the safety feature off. Officer Whitman also recovered $1,521 in cash from Mr. Burton's left front pocket. Officers searched the alley near the bank for the

black jersey, cap, and do-rag witnesses described him as wearing, but found only the black jersey stashed in the alleyway located near the bank. Because officers were unaware of the ripped wind pants, they did not search for them and did not find them during the search for the other clothing articles. While the bank teller immediately identified Mr. Burton as the robber, he noticed he was wearing a different shirt at the time of his arrest than during the robbery.

Mr. Burton's wife testified her husband owned a pair of black wind pants with a rip in the seat area which she had not seen since the day of the robbery. She also acknowledged the loose black jersey could have been worn over the black shirt Mr. Burton wore at the time of his arrest. She further testified Mr. Burton purchased a gun earlier in the year.

## II. Jury Instruction Objection and Issue on Appeal

The district court provided jury instructions on the elements of the crime at issue, which included a finding the defendant: 1) committed a crime of violence as charged; and 2) used or carried a firearm during and in relation to such crime of violence. The jury instructions also explained a bank robbery is a "crime of violence" and that the defendant pled guilty to bank robbery.

Additionally, the district court instructed the jury as to the following, to which Mr. Burton did not object, and does not appeal, but which is important to resolution of the issue presented on appeal:

> To prove a person "used" a firearm during and in relation to a crime of violence, the government must prove that a defendant actively employed the firearm in the commission of the crime. "Active employment" may include brandishing, displaying, referring to, bartering, striking with, firing, or attempting to fire the firearm.

> To prove a person "carried" a firearm, the government must prove that the defendant carried the firearm in the ordinary meaning of the word "carry," such as by transporting a firearm on the person or in a vehicle. A defendant's carrying of the firearm cannot be merely coincidental or unrelated to the crime of violence.

> In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of violence alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm. The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's control at the time the crime of violence was committed.

> The phrase "during and in relation to" means the firearm must have some purpose or effect with respect to the crime of violence; its presence or involvement cannot be the result of accident or coincidence.

Over the objection of Mr. Burton, the district court further instructed the jury, "[a] bank robbery does not necessarily begin or end at the front doors of the bank. The escape or flight phase of a crime is not an event occurring after the

-6-

bank robbery, but is part of the bank robbery." In overruling Mr. Burton's objection to the contested language on escape or flight, the judge noted the contested language was based on and almost identical to the language used in *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1970), *vacated on other grounds by Schreiner v. United States*, 404 U.S. 67 (1971), in which this court said, "[t]he escape phase of a crime is not ... an event occurring 'after the robbery.' It is part of the robbery." He further pointed out the evidence presented to the jury reflected Mr. Burton "was arrested ... within five minutes of the robbery, some few blocks away from the bank, which leads me to the conclusion he was in the escape mode when he was found with the pistol in his waistband, with nine or ten cartridges in the clip and one in the chamber, with the safety off."

Thereafter, during deliberations, the jury sent the court a note which stated, "Judge, are we deciding that the end of the flight was when he was handcuffed? *Also* are we to decide if the government was to prove while he was in the bank he had a gun?" With the agreement of the parties, the court referred the jury to the instructions it previously provided. Following its deliberations, the jury rendered a guilty verdict.

-7-

On appeal, Mr. Burton contends the contested escape or flight portion of the instructions established an arbitrary, impermissibly vague standard for determination of guilt because "escape or flight are expansive terms which could apply to events far removed from the original crime ...." While he admits most courts have declined to define when the flight or escape phase of a robbery ceases, Mr. Burton nevertheless suggests the trial court should have included the standard identified by the First Circuit in *United States v. DeStefano*, 59 F.3d 1, 2, 4 (1st Cir. 1995), where it upheld a jury instruction which stated, "[t]he crime of aiding or assisting an escape cannot occur after the escapee reaches temporary safety." To prove his point, Mr. Burton claims the jury's question about whether flight extended to the time of arrest only highlights the problem created by the disputed legal instruction. He further suggests the contested flight or escape language should not apply in this case, given the lack of evidence showing he carried the gun into the bank, and the fact he did not have on the wind pants at the time of the arrest, suggesting he retrieved the gun from the alleyway where he allegedly stashed the other pair of pants.

In opposition, the government points out most courts have generally declined to explicate a bright line rule on when the escape or flight phase ends because various unique factual scenarios underlie escape and flight cases.

Moreover, it suggests that even if Mr. Burton did not have the gun on his person when he robbed the bank, the evidence directly proved Mr. Burton carried a firearm "during and in relation to the bank robbery" because he had the firearm on his person "within inches of the robbery proceeds, within a few blocks of the robbery, and not less than a few minutes after he left the bank premises."

## III. Discussion

With respect to our standard of review:

> We review the district court's refusal to give a particular jury instruction for abuse of discretion. In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. The question of whether the jury was properly instructed is a question of law, and thus, our review is de novo.

> We consider all the jury heard and, from [the] standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues. We will reverse a conviction due to an erroneous instruction only if the error was prejudicial when viewed in light of the entire record.

*United States v. Nelson*, 383 F.3d 1227, 1230 (10th Cir. 2004), *quoting United States v. Voss*, 82 F.3d 1521, 1529 (10th Cir. 1996) (emphasis omitted) (alteration in original).

As to the law on the issue of escape or flight, the district court correctly

stated our position that "[t]he escape phase of a crime is not ... an event occurring 'after the robbery.' It is part of the robbery." *Von Roeder*, 435 F.2d at 1010. While we have not previously applied this proposition to facts similar to those presented here, other circuits have. The Eighth Circuit applied the same proposition to a robbery defendant who was apprehended fleeing with a gun in his vehicle. *See United States v. Pate*, 932 F.2d 736, 737 (8th Cir. 1991). In so doing, it held that 18 U.S.C. § 924(c)(1) "reaches the possession of a firearm which *in any manner* facilitates the execution of a felony" so that a reasonable jury could find a defendant, who has a gun available during flight from a robbery, used that weapon during and in relation to robbery of the bank. *Id.* at 737 (quotation marks and citation omitted). Similarly, the Third Circuit has determined a jury may reasonably conclude the presence of a gun in the getaway car during flight from a robbery has the "potential of facilitating" the bank robbery, and thereby constitutes the carrying of a firearm during and in relation to a bank robbery, even if no evidence shows the firearm was carried into the bank. *See United States v. Williams*, 344 F.3d 365, 370-72 (3d Cir. 2003), *cert. denied*, 540 U.S. 1167 (2004). The fact these robbers fled in a vehicle and Mr. Burton fled on foot does not substantively affect the application of these cases to the one at hand. Moreover, we find unconvincing Mr. Burton's criticism that *Pate* and *Williams* provide no definitive point when flight or escape ends. As the court in

-10-

*Williams* suggests, "escape does end at some point, such that the concept of 'during and in relation to' will have some boundaries as a matter of common sense. But we believe that it is a fact-based inquiry ...." 344 F.3d at 375.

After viewing the jury instructions as a whole, considering the law with respect to escape or flight, and applying our de novo standard of review, we cannot say the district court abused its discretion in not using the jury instruction proposed by the defendant, nor can we say it otherwise erred in applying the escape or flight language previously sanctioned by this court. Not only are we bound by our court precedent, *see In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993), but we agree with the government that a bright line rule on when an escape or flight phase ends might not adequately take into account some of the unique factual scenarios underlying escape and flight cases.

We further believe the contested jury instruction language, when taken together with the other instructions and viewed in light of the evidence, did not mislead the jury. As the government contends, and the district court acknowledged, the evidence directly proved Mr. Burton "carried" a firearm "during and in relation to the bank robbery" because he had the firearm on his person within inches of the robbery proceeds, within a few blocks of the robbery,

and not less than a few minutes after he left the bank premises. The fact no one saw a bulge under Mr. Burton's wind pants or that he no longer wore the same pants when arrested with the gun does not change our conclusion. Because escape or flight is a phase of a robbery, and Mr. Burton possessed a gun while obviously fleeing the robbery, we believe the jury could reasonably find Mr. Burton carried a gun in violation of § 924(c), even if he did not carry the weapon into the bank. *See Williams*, 344 F.3d at 370-72; *Pate*, 932 F.2d at 737. Our holding is not altered by the question tendered by the jury during deliberation, given that the instructions to which they were referred were sufficient to make a determination. Besides properly including flight or escape as a phase of the robbery, the instructions also clearly defined "carried," explained the government was not required to show Mr. Burton displayed the gun, and instructed the jury that the gun must have some usefulness, purpose or effect with respect to the crime. As previously indicated, a fair reading of the jury instructions, together with the evidence presented, shows the jury could reasonably find Mr. Burton guilty of the crime for which he was convicted.

IV.  Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Burton's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge